UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MALYNA TIEV and JAMES NORRIS,

Plaintiffs,

v.

THE STANDARD FIRE INSURANCE COMPANY,

Defendant.

CASE NO. 2:23-cv-950

ORDER

## 1. INTRODUCTION

This case arises from Plaintiffs Malyna Tiev and James Norris's attempt to collect underinsured motorist (UIM) benefits under their policy with Defendant The Standard Fire Insurance Company ("Standard Fire"). Tiev and Norris bring claims against Standard Fire under Washington State law alleging bad faith; negligence; violation of the Insurance Fair Conduct Act (IFCA); violation of the Consumer Protection Act (CPA); and breach of contract. Dkt. No. 1-5.

Standard Fire moves for partial summary judgment on Plaintiffs' extracontractual claims. Dkt. No. 21. In its motion, Standard Fire cites evidence of an arbitration award issued in a proceeding between Tiev and the at-fault driver in

the underlying car crash. *See* Dkt. No. 22 ¶ 11. Tiev and Norris oppose summary judgment and move to strike all references to the arbitration award. Dkt. No. 24. Tiev and Norris also ask this Court to impose sanctions against Standard Fire and its counsel for mentioning the arbitration award. *Id.*

Having considered the briefings, the record, and the law, and having heard oral argument from the parties, Dkt. No. 33, the Court DENIES Tiev and Norris's motion to strike and request for sanctions, and DENIES Standard Fire's motion for partial summary judgment.

## 2. BACKGROUND

This lawsuit stems from a car accident that occurred in February 2018. Dkt. No. 1-5 ¶¶ 4.1-4.4. At the time of the crash, Plaintiffs Tiev and Norris were in their car with their minor child: Tiev was driving, Norris was in the passenger seat, and the child was in the rear passenger seat. *Id.* Their car had come to a stop behind a line of cars waiting to turn left when another driver—the "at-fault driver"—struck their car from behind. *Id.* An independent witness on the scene declares, undisputed, that the at-fault driver was traveling at about 30 miles per hour, did not brake before impact, and later admitted she did not see the Tiev vehicle because she was withdrawing cigarettes from her passenger seat. Dkt. No. 26 at 2-5. Tiev was injured in the crash and later received care from her treating physician, Dr. Ben Lacy, who diagnosed crash-induced myofascial pain, strain of neck muscles, strain of lumbar region, and periscapular pain. *Id.* at 50.

At the time of the accident, the at-fault driver had liability insurance coverage from Allstate with a $100,000 limit. Dkt. No. 22 ¶ 11. Tiev and Norris had

automobile insurance coverage from Standard Fire, including a Personal Injury Protection (PIP) policy with a $10,000 limit and a UIM bodily injury policy with limits of $100,000 per person and $300,000 per incident. Dkt. No. 28-1 at 2-4. Standard Fire paid Tiev the entirety of her PIP benefit ($10,000). Dkt. No. 22 ¶¶ 4, 26.

Following the crash, Tiev sued the at-fault driver in state court. The case proceeded to mandatory arbitration, and the arbitrator awarded $77,725.47 to Tiev.[1] *Id.* ¶¶ 10-11. Allstate appealed the arbitration award to the Superior Court, and the case was set for trial de novo in February 2023. *Id.* ¶ 12.

After arbitration, Tiev retained a medical expert, Dr. David Spanier, to assess her injuries. Dkt. No. 25 ¶ 3(D). In June 2022, Tiev won a motion for partial summary judgment, with the state court finding the entirety of Tiev's past medical expenses were reasonable, necessary, and crash-related. *Id.* ¶ 3(D). In January 2023, rather than go to trial, Allstate acceded to Tiev's demand to settle Tiev's claim for the full $100,000 policy limit. Dkt. No. 26 at 9. Tiev promptly notified Standard Fire of the settlement, *id.* at 14-15, and Standard Fire agreed to waive any subrogation claim stemming from the $10,000 in PIP benefits it had paid to Tiev. Dkt. No. 25-2 at 2.

Within days of settling against Allstate, Tiev opened a UIM claim with Standard Fire, alleging total damages from the crash of "$731,700+" and demanding full payment under her $100,000 UIM policy. *Id.* at 35. The demand letter broke

---

[1] Tiev and Norris do not dispute this fact, but they move to strike evidence of it. Dkt. No. 24 at 5-7.

down Tiev's damages as follows: $16,700 in past medical specials; $40,000+ in future medical specials, $100,000 in past general damages, $500,000 in future general damages, and $75,000 for Norris's loss of consortium. *Id.*

Tiev conveyed the following facts in support of her demand: (1) before the crash, Tiev had "no relevant or admissible past medical history of symptomatic neck, mid-back, shoulder-trapezius or lower back/SI joint pain"; (2) the only pre-crash mention of back pain in her records came from an inadmissible September 2016 doctor visit for lower back pain that the doctor characterized as minor and that resolved quickly with no further treatment; (3) Tiev received "low back/SI joint, mid-back, and neck injuries" in the crash; (4) Tiev's counsel hired Dr. Spanier to opine on the nature and permanency of the injuries; (5) Dr. Spanier believed, as did Dr. Lacy, that the myofascial residuals and facet-generated pain induced by the crash would be permanent; (6) Tiev continues to suffer from persistent pain, despite physical therapy, massage therapy, injection therapy, acupuncture, home exercise, and spending hundreds of dollars on the ergonomics of her home office; (7) this pain is exacerbated because "sitting and working long stretches on the computer are necessary and unavoidable parts of her work"; (8) both Dr. Spanier and Dr. Lacy were prepared to testify that Tiev had reached maximum medical improvement; (9) her physical symptoms had caused depression, irritability, and anxiety; and (10) the only feasible future treatment would be palliative, not curative, including trigger point injections, spinal blocks, and physical therapy. *Id.* at 12-23.

Attached to this demand letter were detailed records of past medical treatment, medical bills, the expert report from Dr. Spanier, a sworn declaration

from Dr. Lacy, and an extensive narrative recounting Tiev's life and immigration history. *Id.* at 36. The letter gave Standard Fire a "time limit of 30 days in which you may accept this offer to settle within [Tiev's] policy limits." *Id.* at 15.

Before receiving this demand letter, Standard Fire had already taken steps to address Tiev's case. After the accident, Standard Fire paid Tiev all of her benefits under her PIP Policy ($10,000). Dkt No. 22 ¶ 4. It also took a statement from Tiev about the accident, her medical treatment, and prior medical history; and it maintained communication with Allstate and Tiev's counsel throughout the litigation between Tiev and the at-fault driver. *Id.* ¶¶ 6-10. On January 23, 2023, upon receiving Tiev's demand for $100,000 in UIM benefits, Standard Fire opened a UIM claim and began a formal investigation. *Id.* ¶¶ 13-26.

Three days later, Standard Fire initiated its "Nurse Review," sharing the medical documents Tiev had provided—including Dr. Spanier's report, Dr. Lacy's treatment notes, and records of Tiev's 2016 doctor visit for lower back pain—with its in-house Licensed Practical Nurse (LPN) Tanya Blachowicz. *Id.* On January 31, 2023, Blachowicz submitted her final report. *Id.* Blachowicz agreed with Dr. Lacy and Dr. Spanier's diagnosis of cervical/thoracic sprain/strain, yet concluded, contrary to Dr. Lacy and Dr. Spanier, that Tiev did not sustain permanent injuries from the crash and that any treatment after June 2018 was unlikely related to the accident. *Id.* Upon receiving this report, Reid Mitsuyoshi, the claims adjuster assigned to Tiev's claim, concluded that Tiev's total damages were between $36,445 and $46,446, comprising $13,111 in medical special damages; $20,000 to $30,000 in general damages; and $3,333+ in *Winters* fees owed on the PIP claim. *Id.*; *see also*

Dkt. No. 25-2 at 83. Mitsuyoshi arrived at these figures, in part, by denying any expenses for future medical treatment. Dkt. No. 25-2 at 80.

It is undisputed that LPN Blachowicz, the nurse on whose evaluation Mitsuyoshi relied, is not a licensed physician, chiropractor, or osteopath; is not qualified to make diagnoses or prescribe treatment; is employed by Standard Fire; and is based in New York, not Washington (where Tiev was injured and resides). *See generally* Dkt. No. 25-3 at 5-28. Blachowicz also admitted in deposition that she did not review Dr. Lacy's or Dr. Spanier's reports, or could not remember reviewing them, while assessing Tiev's damages; that she completed her entire review of Tiev's case within three hours; and that her review used standardize guidelines ("ODG" guidelines) to determine the reasonable duration of treatment. *Id.* at 16, 20, 25-26.

Considering the $100,000 Allstate settlement, the $10,000 PIP distribution, and the $36,445-$46,446 damages estimate, Standard Fire determined that Tiev had been fully compensated for her injuries. Dkt. No. 22 ¶ 26. In February 2023, Mitsuyoshi informed Tiev of Standard Fire's position. *Id.* ¶ 27. The parties disputed whether Standard Fire's stance amounted to a "zero offer." Dkt. No. 25-2 at 40-43. Holding fast to their $100,000 demand, Tiev and Norris requested that Standard Fire pay them any undisputed amount short of the $100,000. *Id.* Standard Fire declined to do so, but it did agree to pay for mediation, and in March 2023, the parties entered mediation to no avail. *Id.* at 86.

On June 7, 2023, Tiev filed this action in state court. Dkt. No. 1-5. Standard Fire timely removed to federal court, Dkt. No. 1, and on June 17, 2024, filed this

partial summary judgment motion. In support of their arguments on partial summary judgment, both parties offer expert testimony on the reasonableness of Standard Fire's claim handling. Standard Fire's expert sees "nothing unreasonable or inappropriate in the methodology utilized by claims handler Mitsoyushi in evaluating the case as to damages." Dkt. No. 23-5 at 5. Tiev's expert views Standard Fire's management of Tiev's claim as "complete guesswork and speculation" and a "gross departure from recognized industry standards." Dkt. No. 25-3 at 78, 83.

## 3. DISCUSSION

### 3.1 Legal standard.

"[S]ummary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (internal citation omitted). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, courts must view the evidence "'in the light most favorable to the non-moving party.'" *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019) (internal citation omitted). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Summary judgment should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**3.2 Genuine issues of material fact preclude summary judgment on Plaintiffs' insurance bad-faith claim.**

Tiev and Norris charge Standard Fire with bad faith for its "arbitrary, wrongful and legally unreasonable refusal to pay reasonable UIM benefits to the Plaintiffs." Dkt. No. 1-5 at 11. Standard Fire moves for summary judgment of this claim, arguing that "the facts establish clearly that Standard Fire acted within the confines of normal rules of procedure and ethics." Dkt. No. 21 at 12.

"[A]n insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1276 (2003). "To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." *Id.* at 1277. "Whether an insurer acted in bad faith is a question of fact." *Id.* There is no bad faith where "there is a debatable question regarding coverage for the loss, and the denial of coverage is based on a reasonable interpretation of the insurance policy." *Capelouto v. Valley Forge Ins. Co.*, 990 P.2d 414, 422 (1999). "The insurer is entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based upon reasonable grounds." *Smith*, 78 P.3d at 1277.

As Standard Fire points out, Dkt. No. 21 at 10, a UIM insurer "stands in the shoes" of the tortfeasor and may assert any defenses to liability or damages that would have been available to the tortfeasor. *Ellwein v. Hartford Acc. & Indem. Co.*, 15 P.3d 640, 646-47 (2001), *overruled in part on other grounds*, *Smith*, 78 P.3d 1274. This legal relation creates an arms-length, adversarial dynamic between insurer

and insured. *Id*. Even so, a UIM insurer owes an unyielding duty of good faith to its insured, and the insured has the right to a "reasonable expectation that he will be dealt with fairly." *Id.* (cleaned up).

Tiev and Norris offer evidence that Standard Fire denied UIM coverage in bad faith by relying on a cursory, standardized, one-size-fits-all "Nurse Review" of Tiev's medical information, performed by a non-physician LPN—Blachowicz—in Standard Fire's direct employ. Blachowicz admits that she did not review, or could not recall reviewing, the medical reports authored by Tiev's treating physician and medical expert before she arrived at the conclusion, in less than three hours, that, contrary to the opinions of Tiev's doctor and medical expert, Tiev did not suffer permanent injuries from the crash. According to Tiev and Norris's insurance expert, reliance on Blachowicz's report to deny coverage constitutes "practice violations [that] are just so far beyond the norms… that it's making this insurance an unusable product." Dkt. No. 25-3 at 85.

These evidentiary assertions are enough to create triable questions of fact on the bad-faith claim. Consider, by analogy, *Leahy v. State Farm Mut. Auto. Ins. Co.*, 418 P.3d 175 (2018) (reversing summary judgment on insurance bad-faith claim). There, the insured's and insurer's medical experts disagreed over whether a car crash caused the insured's autoimmune disease. *Id.* at 178-79. Based only on its own expert's opinion, the insurer offered $11,116.11 to settle the UIM claim, despite a $100,000 policy limit. *Id.* at 180. On appeal, the court held that questions of fact prevented summary judgment on "whether it is reasonable for an insurer to deny

coverage based solely on its own expert when there is other credible evidence on causation." *Id.* at 186-88.

Like *Leahy*, the evidence here—taken in the light most favorable to Tiev and Norris—suggests that Standard Fire denied coverage to its insured based on its own internal analysis, while discounting or even ignoring the expert opinions presented by its insured. Especially given the reasonable questions raised about Blachowicz's qualifications and methodologies, the Court finds that Tiev and Norris have uncovered a genuine issue of fact over whether Standard Fire's claim handling crossed a line from reasonably adversarial to unreasonably bad faith. *See also Spicher v. Am. Fam. Mut. Ins. Co., S.I.,* No. C22-1116 MJP, 2023 WL 5634210, at *4 (W.D. Wash. Aug. 31, 2023) ("[T]he Court cannot resolve the bad faith claim at summary judgment because the Parties have presented contrasting and competing evidence as to whether AmFam acted reasonably or not."); *Jin v. GEICO Advantage Ins. Co.*, 700 F. Supp. 3d 988, 994 (W.D. Wash. 2023) ("[E]ven if GEICO can point to a reasonable basis for its action, summary judgment is unwarranted because Jin presented evidence that other factors outweighed the alleged reasonable basis.") (cleaned up). Thus, summary judgment on Plaintiffs' bad-faith claim is denied.

### 3.3 Genuine issues of material fact preclude summary judgment on Plaintiffs' Insurance Fair Conduct Act claim.

Tiev and Norris argue that Standard Fire's unreasonable denial of Tiev's UIM claim gives rise to liability under IFCA. Dkt. No. 1-5 at 12. "IFCA provides that any 'first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action . . . to

recover the actual damages sustained.'" *Heide v. State Farm Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1104, 1107 (W.D. Wash. 2017) (citing RCW 48.30.015(1)). Given that unreasonable denial of coverage supports both bad faith and IFCA liability, the same issues of fact that preclude summary judgment on Tiev and Norris's bad-faith claim—*see supra* § 3.2—also apply to their IFCA claim.

Standard Fire counters that it did not deny, let alone unreasonably deny, Tiev and Norris's UIM claim and therefore cannot be held liable under IFCA. *See Perez-Crisantos v. State Farm Fire & Cas. Co.*, 389 P.3d 476, 477 (2017) (holding that IFCA liability only exists where coverage has in fact been denied). Standard Fire asserts that it "never denied coverage"; that "[t]his was always a value dispute"; that—contrary to Tiev and Norris's claims—it did not make a "zero offer"; and that it has remained open to mediation. Dkt. No. 27 at 7.

This argument is unpersuasive. Courts applying IFCA do not put form over function. "Where the insurer pays or offers to pay a paltry amount that is not in line with the losses claimed, is not based on a reasoned evaluation of the facts (as known or, in some cases, as would have been known had the insurer adequately investigated the claim), and would not compensate the insured for the loss at issue, *the benefits promised in the policy are effectively denied*." *Morella v. Safeco Ins. Co. of Illinois*, No. C12-0672RSL, 2013 WL 1562032, at *3 (W.D. Wash. Apr. 12, 2013) (emphasis added); *see also Heide*, 261 F. Supp. 3d at 1107 (citing *Morella*) (declining to distinguish claim-value dispute from denial of coverage); *Langley v. GEICO Gen. Ins. Co.*, 89 F. Supp. 3d 1083, 1092 (E.D. Wash. 2015) (same); *Jin*, 700 F. Supp. 3d

at 992 (same); *Box Robison v. Allstate Fire & Cas. Ins. Co.*, No. 2:23-CV-216, 2024 WL 1345076, at *3 (W.D. Wash. Mar. 29, 2024) (same).

Here, it is undisputed that Standard Fire offered no compensation after analyzing Tiev's UIM claim and concluding that the PIP distribution and Allstate settlement had sufficiently compensated her. Tiev and Norris—despite holding fast to their demand for the full UIM policy limit—requested that Standard Fire pay them any undisputed amounts, but Standard Fire refused. *See Beasley v. Geico*, 517 P.3d 500 (2022), *review denied*, 523 P.3d 1188 (2023) (holding that refusal to pay undisputed damage amount short of plaintiff's full demand constituted denial of benefits under IFCA). Viewing these facts in the light most favorable to Tiev and Norris, the Court finds that Tiev and Norris have highlighted a genuine issue of material fact to survive summary judgment on their IFCA claim.

### 3.4 Summary judgment on Plaintiffs' Washington Consumer Protection Act (CPA) claim is unwarranted.

A CPA claim entails five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986); *see also Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 889 (2009) ("The CPA is to be 'liberally construed that its beneficial purposes may be served.'"). Standard Fire argues that Tiev and Norris cannot meet the first, fourth, and fifth elements. Dkt. No. 21 at 13-17. The Court considers each disputed element in turn.

On the first element, Tiev and Norris assert that Standard Fire committed an "unfair or deceptive act or practice" by violating IFCA, breaching the duty of good faith, and violating WAC 284-30-330. Dkt. No. 1-5 at 10-11; *see* WAC 284-30-330 (defining as "unfair methods of competition and unfair or deceptive acts or practices" "[r]efusing to pay claims without conducting a reasonable investigation"); *see also Peoples v. United Servs. Auto. Ass'n*, 452 P.3d 1218, 1221 (2019) ("It is well established that insureds may bring private CPA actions against their insurers for breach of the duty of good faith or for violations of Washington insurance regulations."); *Industrial Indemnity v. Kallevig*, 792 P.2d 520, 529 (1990) ("A violation of WAC 284-30-330 constitutes a violation of RCW 48.30.010(1), which in turn constitutes a per se unfair trade practice by virtue of… legislative declaration..."). Given that Tiev and Norris survive summary judgment on their IFCA and bad-faith claims, it necessarily follows they have shown that a jury could find in their favor on the first element of their CPA claim.

As for the fourth and fifth elements, Standard Fire argues that Tiev and Norris have failed to offer evidence of cognizable injury to "business or property" arising from the insurance dispute, as distinct from personal injuries arising from the underlying car accident. This argument fails. Tiev and Norris do not seek personal injury recovery from Standard Fire; they seek contractual and extracontractual damages for Standard Fire's bad-faith handling of Tiev's UIM claim. "[T]he deprivation of contracted-for insurance benefits is an injury to 'business or property' regardless of the type of benefits secured by the policy." *Peoples v. United Servs. Auto. Ass'n*, 452 P.3d 1218, 1222 (2019). Apart from

deprivation of contracted-for benefits, there is also a question of fact over whether Standard Fire's refusal to pay Tiev's UIM benefits has caused Tiev to incur investigation costs cognizable under the CPA. *Id.* at 1223 ("[W]e have continued to recognize that expenses incurred to investigate a deceptive act or practice are cognizable injuries and damages under the CPA.") (citing cases)). As such, Standard Fire fails to show that summary judgment on the issues of injury and causation is warranted.

In sum, Standard Fire's motion for summary judgment on Tiev and Norris's CPA claim is denied.

**3.5 Standard Fire fails to carry its burden of showing that summary judgment is warranted on Plaintiffs' negligence claim.**

Tiev and Norris claim that Standard Fire, "as the Plaintiffs' insurer, owed statutory, contractual, and common law duties to the Plaintiffs, which duties were breached by the conduct of the Defendant in the handling and adjustment of the Plaintiffs' UIM claims[.]" Dkt. No. 1-5 at 11. Standard Fire moves for summary judgment on this claim but offers no claim-specific arguments on the elements of negligence. *See generally* Dkt. No. 21. Given the Court's above-stated findings on the inappropriateness of summary judgment on Tiev and Norris's bad-faith claim, *supra* § 3.2, the Court denies Standard Fire's motion for summary judgment on the related negligence claim.

**3.6 The Court declines to strike evidence of the disputed arbitration award and to impose sanctions.**

In their opposition to partial summary judgment, Tiev and Norris move to strike Standard Fire's references to the "appealed and never-final Civil Arbitration Award" rendered in the preceding dispute between Tiev and the at-fault driver/Allstate. Dkt. No. 24 at 6. Tiev and Norris argue that Standard Fire's references to this award violate the Washington Superior Court Civil Arbitration Rules (SCCAR) 7.2(a) and (b), which read as follows:

> (a) Sealing. The clerk shall seal any arbitration award if a trial de novo is requested. Such sealing shall prohibit judicial officers' access to the award until the trial de novo is completed or the case is otherwise completed, at which time the clerk shall unseal the award.
>
> (b) No Reference to Arbitration; Use of Testimony.
> (1) The trial de novo shall be conducted as though no arbitration proceeding had occurred. No reference shall be made to the arbitration award, in any pleading, brief, or other written or oral statement to the trial court or jury either before or during the trial, nor, in a jury trial, shall the jury be informed that there has been an arbitration proceeding

SCCAR 7.2; *see also* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").

Standard Fire counters that the arbitration award is relevant to Plaintiffs' extracontractual claims because "[r]egardless of what evidence the arbitration award offers as to the amount of Plaintiff's damages, the arbitration award is clear evidence of Standard Fire's mental state at the time it was evaluating Plaintiff's claim." Dkt. No. 27 at 4. Put differently, Standard Fire argues that even if SCCAR 7.2 prohibits consideration of the arbitration award in a trial de novo whose purpose is to determine Tiev's actual damages from the underlying crash, the state-court

rule doesn't apply in a proceeding whose purpose is to determine the reasonableness of Standard Fire's handling of Tiev's UIM claim.

While the Court finds Standard Fire's argument persuasive, the Court need not resolve the admissibility of the arbitration award right now. "In general, only admissible evidence may properly be considered by a trial court in *granting* summary judgment." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324 (9th Cir. 1980) (emphasis added). Here, even assuming the arbitration award is admissible, the Court denies Standard Fire's motion for partial summary judgment. *See supra* §§ 3.2-3.5. Thus, the Court need not address whether SCCAR 7.2 bars consideration of the arbitration award in relation to the extracontractual claims. The motion to strike is therefore denied. This decision does not resolve Tiev and Norris's pending motion in limine seeking to exclude the same evidence at trial. *See* Dkt. No. 29 at 14-16.

Standard Fire offers non-frivolous arguments about the admissibility of the arbitration award: namely, that SCCAR 7.2 addresses only the admissibility of the arbitration award at a trial de novo in the underlying dispute, not a later UIM bad-faith claim. Tiev and Norris's motion to sanction Standard Fire for their references to the arbitration award is therefore denied.

## 4. CONCLUSION

For the reasons stated above, the Court DENIES Standard Fire's motion for partial summary judgment. Tiev and Norris's motion to strike and their request for sanctions is also DENIED.

It is so ORDERED.

Dated this 4th day of October, 2024.

Jamal N. Whitehead
United States District Judge